**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

_____
                                                  :
BIENVENIDO CASILLA,                               :
                                                  :        Civil Action No.: 05-CV-4590(FLW)
                         Plaintiff,               :
                                                  :        **OPINION**
        v.                                        :
                                                  :
NEW JERSEY STATE PRISON, <u>et</u> <u>al.</u>,    :
                                                  :
                         Defendants.              :
_____:

**<u>WOLFSON</u>**, **<u>United States District Judge</u>:**

This case involves <u>pro</u> <u>se</u> Plaintiff Bienvenido Casilla's Eighth Amendment § 1983

deliberate indifference claims, stemming from allegedly inadequate medical treatment he

received as a prisoner incarcerated at New Jersey State Prison ("NJSP"). Presently before the

Court are the motions of defendants Roy Hendricks, former Administrator of NJSP, and

Michelle Ricci, Acting Administrator of NJSP,[1] to dismiss Plaintiffs claims pursuant to <u>Fed R.</u>

<u>Civ. P.</u> 12(b)(6), as well as the summary judgment motion of defendant St. Francis Medical

Center ("St. Francis"). Because the Court's prior Opinion in this matter dealt with similar legal

issues, I will, where applicable, rely on my prior analysis in <u>Casilla v. New Jersey State Prison</u>,

Docket No. 05-4590, 2006 WL 2534416 (D.N.J. Aug. 31, 2006).

---

[1] To the extent that Plaintiff brings claims against Hendricks and Ricci in their official
capacities as New Jersey Department of Corrections officials, such claims are barred by the
Eleventh Amendment: "courts have consistently extended sovereign immunity to NJDOC
officials in § 1983 actions." <u>Casilla v. New Jersey State Prison</u>, Docket No. 05-4590, 2006 WL
2534416 (D.N.J. Aug. 31, 2006) (citations omitted). Thus, the Court will only consider
Plaintiff's claims against Hendricks and Ricci in their individual capacities.

**I. Factual Background**

Because Hendricks and Ricci move to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6), the following recitation of facts assumes Plaintiff's allegations to be true. Additional facts pertinent to St. Francis' summary judgment motion will be set forth when appropriate.

**1. Plaintiff's Allegedly Unaddressed Medical Needs**

Plaintiff's Eighth Amendment claims are based on defendants' alleged deliberate indifference to his medical needs associated with his knee injuries and stomach pain.[2] See Amended Complaint (Am. Compl.), 6-11. After an accident around January 2001, Plaintiff suffered swelling and severe pain in his knee. However, he was merely prescribed over the counter medication and was not given an MRI until the beginning of 2003. Thereafter, a "specialist recommended surgery based on the MRI outcome," yet no surgery was performed until February 11, 2004 at St. Francis. Id. at 6. Hence, notwithstanding Plaintiff's requests for medical attention, he claims that his condition was ignored, resulting in a worsening condition and severe pain. Id.

Plaintiff also alleges that, following surgery, he went without "any medication to prevent possible post-surgery infection" until May 20, 2004, when he received post-surgery treatment. Id. at 7. However, "constant severe swelling and pain continued," and despite Plaintiff's complaints, Plaintiff was not given "meaningful treatment, instead [receiving] over the counter medication." Id. at 7. Plaintiff was given corrective right knee surgery on December 20, 2005 at

---

[2]Plaintiff's "Statement of Claims" in his initial Complaint also alleges that he was denied neurologist recommended testing for a head injury and "meaningful scientific evaluation" for an as of yet undiagnosed illness. However, none of the present defendants are alleged to be involved in any of these issues, and they are omitted from Plaintiff's more detailed statement of claims in his later complaints.

St. Francis.  Six days after the corrective surgery, Plaintiff was "brought back to the prison, despite [the] fact that [he] was experiencing severe swelling, pain and fever." Id. He was then left at the prison's clinic for at least three days, where he was only provided over the counter medication. Id. at 7-8. As a result, the knee infection "became so sever that [a] massive quantity of blood kept pouring over my bed from the infected surgery." Id. at  8. Sixteen days after the surgery, a doctor removed the stiches, "but failed to react upon the presence of severe swelling, pain and bleeding." Id. Eighteen days after the surgery, a physical therapist observed Plaintiff's severe bleeding and swelling, and Plaintiff was sent back to St. Francis for follow up treatment for the infection. Id.

Additionally, Plaintiff alleges that from 2003-2006, he has endured constant severe stomach pain. Although he was diagnosed with a hernia reflux condition, Plaintiff was merely treated with over the counter medication and denied adequate testing, which lead to the worsening of his condition. Further, a specialist recommended corrective surgery on November 24, 2003, and despite Plaintiff's requests for treatment, Plaintiff never received the recommended surgery. Id. at 8-9.[3]

Plaintiff brings claims against both Hendricks, as the Adminstrator of New Jersey State Prison, and Ricci, as the Associate Administrator, based on a theory of supervisory acquiescence to the deliberate indifference of others towards Plaintiff's medical needs. Plaintiff alleges that "[u]nder Administrator Hendrick and with his consent an official policy of retaliatory actions,

---

[3]A letter from Plaintiff's Public Defender, James Smith, Jr., to a prison Health Services employee, attached to Plaintiff's initial Complaint and dated July 7, 2004, in addition to urging that proper steps be taken to address Plaintiff's continuing stomach pain, states that "apparently the doctor is not willing to do surgery on the hernia because he feels that it would be dangerous to do so."

including deliberate indifference to plaintiff's medical needs . . . was designed and implemented" from January 2001 to the filing of the Amended Complaint in June of 2007. Amended Complaint, 1-2. Importantly, Plaintiff's analogous allegation against Ricci omits the assertion that she consented to a policy of retaliatory actions "including deliberate indifference to plaintiff's medical needs." Id. at 2.

In addition to the above allegations, Plaintiff has attached several pieces of correspondence to his initial Complaint which are relevant to his claim against Hendricks. James Smith, Jr., Plaintiff's Public Defender, wrote a letter to Hendricks, in his capacity as the prison Superintendent, and to the Interim Medical Director, dated March 27, 2003. The letter states that Plaintiff has been suffering stomach pains for two years due to severe constipation, and was only given laxative pills, which did not work. Further, the letter states that Plaintiff was promised the opportunity to see a specialist, which has not occurred. Finally, the letter expresses concern that Plaintiff "might have to endure continued pain for a treatable condition." On April 8, 2003, the Assistant Superintendent replied to Smith, advising that the Health Services Adminstrator was being asked to re-evaluate Plaintiff. Hendricks was copied on the letter, indicating he had reason to believe the situation was being handled appropriately.

On August 6, 2003, Smith sent another letter to Hendricks and the Interim Medical Director regarding Plaintiff's stomach pain. The letter indicates that Plaintiff had seen a specialist who recommended further tests at the hospital (which presumably had not been given), and that the medication given to Plaintiff for his continuing constant pain, Tagament, was ineffective. Finally, the letter expresses concern that Plaintiff is "needlessly suffering" and requests that "you do whatever is possible to expedite the diagnosis and treatment of his illness." There is no indication that this letter was met with any response.

Plaintiff's mother sent a letter, dated May 19, 2003, to the NJDOC Commissioner complaining about the lack of treatment her son had received for his stomach problems. The letter makes two particularly notable complaints. First, the letter complains that Plaintiff filed an administrative request to see a doctor in December 2002, and never saw one; yet the reply to his administrative request "states that my son was seen and that he was satisfied with care." Second, the letter states: "Although he has been told that he is scheduled to see a Specialist, none has ever shown up, [g]iving the impression that none was ever scheduled to see my son." Additionally, a letter from Smith is referenced. Finally, the letter complains: "As it stands my son is in constant pains and he rarely sleeps a complete night due to the constant stomach pains."

Importantly, James Barbo, the Director of the Division of Operations of the NJDOC followed up on the above letter with a letter to Plaintiff, dated May 29, 2003. It states: "I am referring her correspondence to Dr. Cevasco, Health Services Unit and Administrator Hendricks for review and resolution of these concerns, as deemed appropriate." (emphasis added). The letter notes that a copy was sent to Hendricks, thus indicating that Hendricks was made aware of the complaints from Plaintiff's mother.[4]

None of Plaintiff's allegations, nor any attached correspondence, indicate that Ricci had any knowledge of Plaintiff's medical needs and complaints.

The involvement of St. Francis in Plaintiff's allegations is limited to the three occasions where Plaintiff was taken there for treatment: the initial (but allegedly delayed) surgery

---

[4]Plaintiff's initial Complaint also includes another letter from Plaintiff's mother to Commissioner Brown, dated November 4, 2005, complaining about the inadequate treatment Plaintiff received for his knee and stomach problems. However, Plaintiff does not allege, and there is no indication in the letter, that Hendricks or Ricci was made aware of this correspondence.

5

performed on Plaintiff's knee on February 11, 2004; the corrective surgery performed on

December 20, 2005; and treatment of Plaintiff's infection stemming from his second surgery on

January 6, 2006. Second Amended Complaint, 5-6. Plaintiff's allegations against St. Francis

focus on the second knee surgery and his lack of sufficient treatment thereafter: that St. Francis

"deliberately denied plaintiff required medical attention when releasing him after knee surgery

despite the fact that he was experiencing a severe infection," which was evident from Plaintiff's

fever and bleeding, and by failing to provide appropriate post-surgery medication. Id. at 2.

**2. Plaintiff's Unwarranted Sanctions**

Plaintiff alleges that his repeated requests for separation from his cellmate due to serious

personal problems were ignored, and as a result, he was attacked by his cellmate on July 7, 2006.

His cellmate threw boiling water mixed with a chemical substance at Plaintiff, and a fight

ensued. Because of his participation in the fight (in which Plaintiff claims he was only defending

himself), Plaintiff was sanctioned with disciplinary charges, resulting in periods of detention,

administrative segregation and lost commutation time. Amended Complaint, 11-12.

Plaintiff claims that he appealed the sanctions. "This appeal resulted in reduction of

sanction to 50 percent down from 180 days to 90 days in both Ad. Seg. and lost commutation

time." Id. at 12. Plaintiff attaches a copy of the appellate administrative decision to the Amended

Complaint. However, Plaintiff claims that he served more than 90 days administrative

segregation, and after being released, he was brought back to administrative segregation so as to

serve 180 days rather than the 90 days mandated by the appellate administrative decision. Id.

However, Plaintiff's Amended Complaint and attachments do not mention any involvement of

Hendricks or Ricci in this matter.

**II. Procedural History**

6

Plaintiff initially filed his Complaint against the New Jersey State Prison, the

Commissioner of the New Jersey Department of Corrections, as well as various medical

professionals, with Hendrickss, Ricci and St. Francis being added as defendants through

subsequent amendments. On August 31, 2006, the Court granted summary judgment to the

former Commissioner, on the ground that there was insufficient evidence of the Commissioner's

direct or indirect participation in Plaintiff's alleged deficient treatment, or the Commissioner's

awareness of a policy, practice or custom creating an unreasonable risk of injury to the Plaintiff.

Casilla, 2006 WL 2534416, *1.

**III. Plaintiff's Deliberate Indifference Claims**

**A. Standard of Review**

When reviewing a motion to dismiss on the pleadings, courts "accept all factual

allegations as true, construe the complaint in the light most favorable to the plaintiff, and

determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled

to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.2008) (citation and

quotations omitted). Recently, in Bell Atlantic Corporation v. Twombly, 127 S.Ct. 1955,(2007),

the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language

contained in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be

dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove

no set of facts in support of his claim which would entitle him to relief." Id. at 1968 (quoting

Conley, 355 U.S. at 45-46). Instead, the factual allegations set forth in a complaint "must be

enough to raise a right to relief above the speculative level." Id. at 1965. As the Third Circuit has

stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up

thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to

suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 127 S.Ct. at 1965). However, the Supreme Court has also made clear that "[a] document filed pro se is 'to be liberally construed,' and a 'pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

**B. Plaintiff's Claims Against Ricci**

The Third Circuit has made clear that an Eighth Amendment deliberate indifference claim against a non-medical prison official requires the pleading of scienter: "absent reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference," and the plaintiff "bears the burden of proving (and hence pleading) facts supporting the defendants' mental states." Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) (citing Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001). Plaintiff's three Complaints plead no facts indicating that Ricci was aware of NJSP employees' alleged deliberate indifference towards Plaintiff's medical needs. Indeed, Plaintiff's allegations regarding Ricci omit the allegation, present in the paragraph pertinent to Hendricks, that her actions "included deliberate indifference to Plaintiff's medical needs." Amended Complaint, 2.  Thus, Plaintiff's § 1983 deliberate indifference claim against Ricci is dismissed.

**C. Plaintiff's Claims Against Hendricks**

Similarly, Plaintiff's three Complaints plead no facts indicating Hendricks was aware of

NJSP employees mistreating or failing to treat Plaintiff's knee injury. The bare assertion that, under Hendricks, and with his consent, "an official policy of retaliatory actions, including deliberate indifference to plaintiff's medical needs," was designed and implemented from 2001 to the 2007 does not meet Plaintiff's initial burden of pleading "facts supporting [Hendricks'] mental state[]." Spruill, 372 F.3d at 236; cf. Casilla, 2006 WL 2534416 at *8 (Casilla's "bare, unsupported claim that Defendant observed a policy or custom of indifference to the medical needs of prisoners" held to be a "conclusory allegation" incapable of withstanding a motion for summary judgement). Thus, with respect to Plaintiff's allegations concerning his knee injury, Plaintiff's § 1983 deliberate indifference claim against Hendricks is dismissed.

However, Plaintiff's Complaints do provide facts to support Hendrick's awareness of Plaintiff's stomach problems and the supposed deliberate indifference of medical personnel towards such problems. Hendricks was sent two letters from Plaintiff's Public Defender, attached to his initial Complaint, specifically drawing attention to Plaintiff's medical needs. It is clear that Hendricks responded reasonably to the March 27, 2003 letter, as indicated by the April 8, 2003 letter directing medical personnel to re-evaluate Casilla. However, read liberally, Plaintiff's Complaints (and attachments) imply that no action was taken in response to the second letter addressed to Hendricks, dated August 6, 2003. In that letter, Plaintiff's Public Defender specifically indicated that a specialist had recommended that Plaintiff receive further testing at the hospital regarding his stomach pain; that his current medication was not reducing Plaintiff's pain; and that he was concerned that Plaintiff was "needlessly suffering." Additionally, Hendricks was notified of Plaintiff's stomach problems (and lack of treatment for such problems, including allegations of a false administrative response form and a failure to deliver promised attention from a specialist) through a letter from Plaintiff's mother. Although

the letter was addressed to Commissioner Brown, the letter was forwarded to Hendricks on May 29, 2003.

When Plaintiff's Amended Complaint is read liberally, and in conjunction with this correspondence, Plaintiff alleges that he was denied recommended testing and surgery for his stomach problems, and further, that Hendricks had "reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner," Spruill, 372 F.3d at 236, or at least not treating him as directed by medical personnel. Thus, at least at the pleading stage, Hendricks' argument that Plaintiff pleads a § 1983 claim based on an impermissible theory of respondeat superior is incorrect. Further, as explained below, the Court rejects Hendricks' alternative arguments for dismissing Plaintiff's claims at the pleadings stage.

Hendricks argues that Plaintiff's Amended Complaint merely sets forth a disagreement with the treatment he received, which is insufficient to state an Eighth Amendment deliberate indifference claim. Hendricks' Brief, 17. But Plaintiff's claim is not merely that he disagrees with his course of treatment or its effectiveness, but that he was denied "specialist recommended surgery," Amended Complaint, 9, for his hernia reflux condition, and, as implied by the letter from Plaintiff's Public Defender and his Amended Complaint, doctor-recommended testing. Additionally, the letter from Plaintiff's mother, which was forwarded to Hendricks indicates that, though Plaintiff was told he was scheduled to see a specialist for his stomach, he never received such treatment. "The Third Circuit has found 'deliberate indifference' in a variety of circumstances, including where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refused to provide for it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." Samuel v. First Corr. Medical, 463 F.Supp.2d 488, 495 (D. Del.

10

2006). Given the letters attached to Plaintiff's Complaint, Plaintiff alleges that Hendricks had knowledge that prison personnel were denying or delaying recommended treatment without reason (not just protesting the quality of such treatment), which, at the pleading stage, is enough to support a § 1983 deliberate indifference claim.

Hendricks also argues that "the record clearly provides that the plaintiff was provided continuous access to medical treatment and that he did receive consistent treatment for his varied conditions." Hendricks' Brief, 17. However, Hendricks attacks Plaintiff's Amended Complaint via a motion to dismiss (where Plaintiff's allegations are assumed to be true), not a motion for summary judgment. While the Court could consider any evidence submitted by Hendricks and convert his motion to dismiss into a motion for summary judgement, Hendricks does not attach any evidence to support his assertion. Instead, he includes a bare citation to "Exhibit A," presumably the Exhibit A attached to the Commissioner's successful motion for summary judgment, which contains detailed information about Plaintiff's treatment record. See Casilla, 2006 WL 2534416, *2-4 (recounting Plaintiff's long record of medical treatment). It may be that when such evidence is considered, Plaintiff's allegations of deliberate indifference regarding his stomach pain are implausible. But it is Hendricks' burden pursuant to a summary judgment motion, not the Court's, to cull through such evidence, attach such evidence, and make clear how such evidence shows that Plaintiff's allegations of deliberate indifference regarding his stomach problems are untenable. Hendricks is, of course, free to move for summary judgment and make such a showing.

Hendricks further argues that, given this Court's prior grant of summary judgment to Commissioner Brown on Plaintiff's deliberate indifference claims, "Plaintiff is therefore precluded from raising the same claims against NJSP Administrator[] Hendricks . . . as they are

barred by the doctrine of <u>res</u> <u>judicata</u>." Hendrick's Brief, 6. However, contrary to Hendricks'

contention, Plaintiff's claim against Hendricks is <u>not</u> identical to his claim against Commissioner

Brown: Plaintiff's Amended Complaint, coupled with the correspondence attached to his first

Complaint, alleges various reasons why Hendricks was aware, or should have been aware, of the

alleged inadequate treatment Plaintiff received for his stomach problems. Given the <u>reason</u> the

Court granted summary judgment to Brown, this is an important difference.

In my earlier opinion in this matter, <u>Casilla</u>, 2006 WL 2534416, I granted Brown

summary judgment on Plaintiff's claims because Plaintiff failed to provide sufficient evidence

that Brown had participated in the denial of adequate medical treatment to Plaintiff, or was

aware of such inadequate treatment:

> In the absence of any genuine evidence to the contrary, I find no factual dispute
> that Defendant did not directly or indirectly participate in the events surrounding
> Plaintiff's claim. Likewise, I find that no material dispute exists over Defendant's
> assertion that he neither instituted nor observed a policy of indifference to the
> medical needs of NJSP inmates, which resulted in harm to Plaintiff.

<u>Casilla</u>, 2006 WL 2534416 at *8. Specifically, the Opinion reasoned:

> I find that Plaintiff presents insufficient evidence to create a material factual
> dispute over Defendant's assertion that no policy, practice, or custom, about
> which Defendant was aware, existed at NJSP which created an unreasonable risk
> of injury to Plaintiff. Further, Plaintiff also fails to demonstrate that Defendant
> was indifferent to such a risk. The only evidence Plaintiff presents in support of
> his argument is a bare, unsupported claim that Defendant observed a policy or
> custom of indifference to the medical needs of prisoners and the method and
> manner of [Correction Medical Service's] treatment of prisoner ailments.
> However, Plaintiff does not present any particular evidence in support of that
> conclusory allegation.
> While the record reflects that on May 19, 2003, and November 4, 2004, Anna
> Pagan, Plaintiff's mother, addressed separate letters to Defendant in which she
> expressed her concern over the state of Plaintiff's health and the adequacy of his
> medical treatment at NJSP, such letters do not support Plaintiff's arguments that
> Defendant implemented, observed, or acquiesced in a policy of deliberate
> indifference to NJSP inmates' medical needs. To the contrary, Defendant asserts
> that he forwarded Pagan's letters to the NJSP Health Services Unit for resolution.

> That claim is supported by the May 19, 2003 reply letter to Pagan from James
> Barbaro, the Director of Operations at NJSP, a letter Barbaro sent to Plaintiff at
> NJSP because Pagan did not include a return address in her correspondence.
> Thus, if anything, Defendant's reaction to Pagan's letters show that Defendant
> took allegations of inadequate care seriously, and promptly referred such matters
> to the relevant subordinate. Similarly, the record also reflects that the several
> Administrative Remedy Forms Plaintiff filed with NJSP administrators, in which
> he complained about the medical care CMS was providing him, were addressed
> promptly by NJSP staff.

Id.  Further, the Court specifically addressed the letters from Smith calling attention to Plaintiff's

medical condition, and explained why they did not preclude summary judgment:

> Additionally, the March 27, 2003, and August 6, 2003, letters from Smith,
> Plaintiff's former attorney, addressed to the Superintendent of NJSP, and the
> Interim Medical Director at NJSP, cannot be considered as evidence of a policy of
> indifference observed by Defendant. Indeed, the letters were not addressed to Defendant and there is no e

Id. at *8 n. 6. Thus, my previous Opinion's analysis turned on Plaintiff's inability to fulfill the

scienter requirement for a deliberate indifference claim, i.e., "absent reason to believe (or actual

knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a

non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter

requirement of deliberate indifference," Spruill, 372 F.3d at 236 (citing Singletary, 266 F.3d at

192). Equally important, summary judgment was not granted to Brown based on a blanket

holding that Plaintiff's record of medical treatment precluded a claim of deliberate indifference

(and the Court takes no position on whether that is the case). The upshot is that, given Plaintiff's

allegations (and attached documentation) relating to the scienter requirement, Plaintiff's claim

against Hendricks is not identical to his claim against Brown, and this Court's previous grant of

summary judgment to Brown - based on a failure to provide evidence to meet the scienter

requirement - does not control Hendricks' present motion. Thus, Hendricks' argument based on

the principles of <u>res judicata</u> fails.[5]

Finally, Hendricks argues that Plaintiff's claims relating to his medical treatment or lack

thereof prior to September 20, 2003 are time-barred by the applicable statute of limitations.

Plaintiff filed this lawsuit on September 20, 2005. The applicable statute of limitations for his §

1983 claims is two years:

> An action brought under 42 U.S.C. § 1983 is subject to the state statute of
> limitations that governs actions for personal injury. <u>Cito v. Bridgewater Township</u>
> <u>Police Dep't</u>, 892 F.2d 23, 25 (3d Cir.1989). "In New Jersey that statute is
> N.J.S.A. 2A: 14-2, which provides that an action for an injury to the person
> caused by a wrongful act, neglect, or default, must be convened within two years
> of accrual of the cause of action." <u>Id.</u> (quoting <u>Brown v. Foley</u>, 810 F.2d 55, 56 (3d Cir.1987)) (internal q

<u>Gibson v. Superintendent of NJ Dept. of Law and Public Safety-Division</u>, 411 F.3d 427, 435 (3d

Cir. 2005). Thus, absent any equitable tolling, Hendricks is correct that Plaintiff's claims relating

to medical treatment or lack thereof prior to September 20, 2003 are time-barred.

In the context of a § 1983 action, the Third Circuit has recently explicated the continuing

violations doctrine as follows:

> The continuing violations doctrine is an equitable exception to a strict application
> of a statute of limitations where the conduct complained of consists of a pattern
> that has only become cognizable as illegal over time. <u>Cowell v. Palmer Twp.</u>, 263
> F.3d 286, 292 (3d Cir.2001). "[W]hen a defendant's conduct is part of a
> continuing practice, an action is timely so long as the last act evidencing the
> continuing practice falls within the limitations period; in such an instance, the
> court will grant relief for the earlier related acts that would otherwise be time
> barred." <u>Brenner v. Local 514, United Bhd. of Carpenters</u>, 927 F.2d 1283, 1295
> (3d Cir.1991). However,
>  [i]n order to benefit from the doctrine, a plaintiff must establish that the
> defendant's conduct is "more than the occurrence of isolated or sporadic acts."
> Regarding this inquiry, we have recognized that courts should consider at least

---

[5] Since Hendricks sought to preclude Plaintiff's claim against Hendricks based on this
Court's ruling in an earlier stage of the same case, Hendricks argument probably should have
been framed under "the law of the case" doctrine. <u>See</u> <u>Hamilton v. Leavy</u>, 322 F.3d 776, 786-87
(3d Cir. 2003).

> three factors: (1) subject matter-whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency-whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. The consideration of "degree of permanence" is the most important of the factors.
> Cowell, 263 F.3d at 292 (citations omitted).

Foster v. Morris, 208 Fed. Appx. 174,177-78 (3d Cir. 2006). However, at this stage of the proceedings the Court is unable to determine whether the continuing violations doctrine applies to this case. In any event, there is no need for such a determination at this time, as even if the doctrine does not apply, Plaintiff has successfully stated a deliberate indifference claim with respect to his medical treatment or lack thereof subsequent to September 20, 2003. The fact that Hendricks was aware of Plaintiff's grievances based on correspondence prior to that date, i.e., the letters from Smith on March 27, 2003 and August 6, 2003, and the letter from Plaintiff's mother that was forwarded to Hendricks on May 29, 2003, does not necessarily mean that a claim based on his failure to take appropriate action subsequent to September 20, 2003 is time-barred.

**D. Plaintiff's Claims Against St. Francis**

St. Francis argues that Plaintiff's § 1983 claim must be dismissed because Plaintiff has failed to file an affidavit of merit, as required by N.J.S.A. 2A:53A-26, et seq. To the extent that Plaintiff brings a state law malpractice claim against St. Francis, such claim is dismissed for this reason. However, "an affidavit of merit is not required to support a § 1983 claim," Costa v. County of Burlington, Docket No. 07-904, 2008 WL 2802570, *1 n.1. (D.N.J. July 22, 2008) (citation omitted), and St. Francis' argument is therefore inapplicable to Plaintiff's § 1983 claim. Since the only ground on which St. Francis moved for summary judgment was Plaintiff's failure

to file an affidavit of merit, Plaintiff's § 1983 claim against St. Francis remains.[6]

## IV. Plaintiff's Claims Relating To His Unwarranted Sanctions

To sustain a § 1983 suit against an official in his individual capacity, "a plaintiff must allege that the defendant directly or indirectly participated in the events giving rise to the claim." Casilla, 2007 WL 2534416 at *7 (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). Hence, individual liability in a § 1983 suit cannot be imposed under a theory of respondeat superior. Id.

Here, Plaintiff fails to allege the personal involvement of Hendricks and Ricci, either direct or indirect, in the events relating to his allegedly unwarranted sanctions - including the failure to separate Plaintiff from his cellmate and the failure to give effect to the decision modifying the initial sanctions imposed by the hearing officer.[7] Since neither Hendricks or Ricci

---

[6] "In order for [Plaintiff] to prevail under 42 U.S.C. § 1983 he must establish two elements: 1) that the conduct complained of was committed by a person acting under color of state law; and 2) that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Fullman v. Pennsylvania Dept. of Correction, Docket No. 07-00079, 2007 WL 257617, *2 (M.D. Pa. Jan. 25, 2007) (citing Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir.1993)). St Francis is granted leave to move for summary judgment, inter alia, on the ground that St. Francis was not "acting under color of state law" when it provided Plaintiff with allegedly deficient treatment. However, the Court notes that the Supreme Court has held that, at least in some circumstances, a physician can be a state actor for purposes of § 1983 when providing treatment to a prison inmate. See West v. Atkins, 487 U.S. 42, 54-57 (1988); see also Fullman, 2007 WL 257617 at *2 (distinguishing West because "nothing suggests that Dr. Russo provided medical care on the prison grounds" and because "[i]nstead, it appears that Fullman was taken to an outside private hospital for urgent medical care") (citation omitted). Of course, St. Francis should take into account that it is a private hospital, and not an individual doctor.

[7] Plaintiff's Amended Complaint does attach a copy of his appeal of the hearing officer's decision imposing sanctions, which was addressed to Ricci. The appeal requests that the charges against Plaintiff be dropped "[d]ue to the fact that [Plaintiff] was a victim in this matter." Amended Complaint. As a result of the appeal, Plaintiff's sanctions were lowered. However, the appeal itself did not give Ricci notice of Plaintiff's problems with his cellmate (prior to the alleged attack) nor of the fact that the appellate administrative decision was allegedly not

can incur liability under a theory of respondeat superior, and Plaintiff has failed to allege their involvement in the actions or inaction Plaintiff attacks in his § 1983 claim relating to his unwarranted sanctions, Plaintiff's § 1983 claims against Hendricks and Ricci relating to these sanctions are dismissed.[8]

## V. Conclusion

For the foregoing reasons, Plaintiff's § 1983 claims against Ricci are dismissed. Plaintiff's § 1983 claims against Hendricks are dismissed, except for Plaintiff's allegation that Hendricks engaged in supervisory acquiescence to medical personnel's alleged deliberate indifference to Plaintiff's stomach problems. Finally, to the extent that Plaintiff relies on a state law malpractice claim, St. Francis' motion for summary judgment is granted. To the extent Plaintiff's claims are based on § 1983, St. Francis' summary judgment motion is denied without prejudice. Further, the Court grants St. Francis leave to file a motion for summary judgement based on, inter alia, the grounds referenced supra at § III.D.

Dated August 21, 2008                                     /s/ Freda L. Wolfson
                                                          Honorable Freda L. Wolfson
                                                          United States District Judge

---

followed, which are the source of Plaintiff's § 1983 claim regarding his prison sanctions. Hence, this document is not sufficient to allege the personal involvement of Ricci with respect to Plaintiff's unwarranted sanctions.

[8] Because of this holding, although Hendricks and Ricci move to dismiss Plaintiff's claims relating to his allegedly unwarranted sanctions for other reasons, the Court need not reach the arguments raised in Point V of their brief.