UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BIENVENIDO CASILLA, | : | Civil No. 05-4590 (FLW) |
| Plaintiff, | : | |
| v. | : | **OPINION** |
| NEW JERSEY STATE PRISON, et al., | : | |
| Respondent. | : | |

**WOLFSON, United States District Judge:**

This case involves Plaintiff Bienvenido Casilla's ("Plaintiff" or ""Casilla") Eighth Amendment deliberate indifference claims, arising from allegedly inadequate medical care he received in connection with his knee and stomach complaints while incarcerated at New Jersey State Prison ("NJSP"). Presently before the Court are summary judgment motions by Defendants St. Francis Medical Center ("St. Francis"), Correctional Medical Services, Inc. ("CMS") and its employee, Dr. Allan Martin, M.D. (collectively "CMS Defendants"), and former NJSP Superintendent Roy Hendricks ("Hendricks") to dismiss Plaintiffs claims pursuant to Fed R. Civ. P. 56. For the following reasons, the Court grants all Defendants' motions for summary judgment.

**I. Procedural History and Statement of Facts**

The current matter has an extensive procedural history in addition to Plaintiff's voluminous medical records. While there are numerous occasions where Plaintiff has seen medical personnel, the following facts are the most relevant to the allegations underlying Plaintiff's claims.

1

Plaintiff is a state prisoner confined to NJSP and originally filed this civil rights action in United States District Court in the District of New Jersey on September 20, 2005. Plaintiff subsequently filed an Amended Complaint on June 29, 2007, and on December 11, 2007, Plaintiff was permitted to file a second amended complaint. After receiving correspondence from Plaintiff in Spanish on November 28, 2008, and appreciating Plaintiff's illiteracy, this Court appointed pro bono counsel to represent Plaintiff on April 24, 2009. The Court also directed counsel to apply to this Court's pro bono fund to defray the costs for the services of an interpreter to assist counsel in communicating with Plaintiff.

On September 28, 2000, Plaintiff was given an intake evaluation by CMS at NJSP with no immediate complaints. Declaration of Paula Azara ("Azara Decl."), Exhibit A, (Plaintiff's Medical Records), September 28, 2000 Entry. Plaintiff's first indication of knee pain occurred on May 15, 2002, and on August 18, 2003, he underwent a magnetic resonance imaging ("MRI") on both of his knees. Id. at May 15, 2002 Entry. While the MRI results indicated no tear of the meniscus or any ligaments in Plaintiff's knees, the MRI did reveal a "small osteochrondral defect at the intercondylar notch interiorly." Id. at August 29, 2003 Entry.  Thereafter, on August 29, 2003, Plaintiff was recommended for arthroscopic surgery. Id. On February 11, 2004, Plaintiff underwent surgery on his right knee at St. Francis Medical Center,[1] and subsequently began physical therapy on May 21, 2004. Id. at February 11, 2004 and May 21, 2004 Entries. On December 2, 2004 Plaintiff was seen by Dr. Arlene Tinker, a CMS orthopedist. Following the consultation, a second knee surgery was recommended and approved for Plaintiff's right knee. Id. at December 2, 2004 Entry.

---

[1] Hendricks' Factual Statement also indicates that Plaintiff had additional surgery on his left knee on February 11, 2004. However, the records of CMS are inconclusive regarding when the surgery on his left knee actually occurred.

On December 20, 2005, one year after surgery was recommended, Plaintiff was re-admitted to St. Francis Medical Center and a "right knee total replacement surgery" was performed on December 21, 2005. The diagnostic report of the x-ray on Plaintiff's right knee resulted in "satisfactory alignment and radiologic appearance." Id. at December 27, 2005 Entry. On March 8, 2006, Plaintiff's right knee was X-rayed again. The results indicated that the prosthesis was in "satisfactory position," and that the surgery was successful. Id. at May 8, 2006 Entry.

Plaintiff's first indication of abdominal pain occurred on August 13, 2002. On June 18, 2003, Plaintiff was referred to a gastroenterologist to determine the severity of his stomach ailments. The examination occurred on July 31, 2003, and revealed no abnormalities. Id. at July 31, 2003 Entry. On August 12, 2003, after again complaining of stomach pains, Plaintiff was diagnosed with "gastritis, pylore infection and reflux disease." Id. at August 12, 2003 Entry. On August 22, 2003, it was recommended that Plaintiff undergo an abdominal X-ray, which was accomplished on August 27, 2003. Plaintiff's X-ray results came back normal. Id. at August 27, 2003 Entry.[2]

On September 4, 2003, Plaintiff was diagnosed with Gastroesphegeal Reflux Disease ("GERD"). Id. at September 4, 2003 Entry. On November 24, 2003, Plaintiff underwent a colonoscopy, which resulted in a diagnosis of a "sliding hiatus hernia, gastritis, gastric antrum nodule and functional bowel disorder." Id. at November 24, 2003 Entry. On June 24, 2004, Plaintiff again consulted with a gastroenterologist. The consultation report attributed Plaintiff's

---

[2] CMS records indicate that the X-ray was reviewed on September 2, 2003. Id. at September 2, 2003 Entry.

discomfort to Irritable Bowl Syndrome ("IBS"). Id. at June 24, 2004 Entry. On July 23, 2004, Plaintiff was diagnosed with diverticulosis. Id. at July 23, 2004 Entry.

The medical records also reveal that although Plaintiff regularly complained of both knee and abdominal pain from 2003-2008, Plaintiff continued to be treated at all relevant times. Specifically, Plaintiff was treated by a CMS doctor on more than forty-seven occasions; seen by a CMS nurse on more than forty-four occasions; sent for diagnostic and/or laboratory testing on at least twenty occasions; underwent arthroscopic and arthroplastic surgery; and was added to the Chronic Care Clinic roster for cardiac care. See generally Azara Decl., Plaintiff's Medical Records. Plaintiff was also seen by a CMS nurse for a myriad of problems including, but not limited to: difficult urination, foot pain, lower back pain, sprained ankle, cough, cold symptoms, sore throat, chest pain, right index finger pain, allergies, constipation, and diarrhea. Id. Furthermore, Plaintiff was prescribed medicine on numerous occasions for both his knee and stomach ailments from 2003 until 2008. Id.

Germane to Plaintiff's claim against Hendricks are three letters sent to various medical personnel within the prison facility and/or Superintendent Hendricks. Assistant Deputy Public Defender James K. Smith, Jr. wrote the first letter, dated March 17, 2003, on behalf of Plaintiff and addressed to Hendricks. This letter was answered by Assistant Superintendent Donald Mee on April 8, 2003, and referred to CMS for resolution. On May 19, 2003, Plaintiff's mother, Ana Pagan, wrote a second letter. This letter was answered on May 29, 2003 by James Barbo, Director of the Division of Operations in a letter to Plaintiff. Barbo subsequently referred Ana Pagan's correspondence to the Health Services Unit and Hendricks for review. Lastly, Assistant

Deputy Public Defender Smith sent a third and final letter addressed to Hendricks, dated August 6, 2003, which allegedly was not answered.[3]

## II. Discussion

### A. Standard of Review for Summary Judgment

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56(c). For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002). For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Kaucher, 455 F.3d at 423. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. Once the moving party has met this burden, the non-moving party must identify, by affidavits or otherwise, specific facts showing

---

[3] In an earlier summary judgment motion, this Court has already dismissed Plaintiff's claim as it relates to the second letter (May 19, 2003). See Casilla v. N.J. State Prison, No. 05-4590, 2008 U.S. Dist. LEXIS 64780 (D.N.J. Aug. 21, 2008). Thus, the only relevant letters that remain are the letters dated March 17, 2003 and May 29, 2003.

that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. "A non-moving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)). Moreover, the non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005). Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

Moreover, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the fact finder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### B. St. Francis Medical Center

The record indicates that Plaintiff has not taken any position with respect to the motion of St. Francis Medical Center. See Plaintiff's Brief in Opposition to the Motions of All Defendants for Summary Judgment, p. 15. Where "a party represented by counsel fails to oppose a motion … the district court may treat the motion as unopposed and subject to dismissal without a merits

analysis." Hollister v. United States Postal Serv., 142 Fed. Appx. 576, 577 (3d Cir. 2005) (citing Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1992). Because Plaintiff has failed to oppose St. Francis' summary judgment motion, summary judgment is granted in favor of St. Francis Medical Center.

### C. Standard of Review for Deliberate Indifference

Prisoners may assert an Eighth Amendment claim pursuant to § 1983 alleging inadequate medical care. Helling v. McKinney, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment"). The Eighth Amendment, the United States Supreme Court has held, imposes on states an "obligation" to provide medical care for those whom it is punishing by incarceration. Estelle v. J.W. Gamble, 429 U.S. 97 (1976). This obligation, as clarified by the Estelle Court, encompasses a duty to prevent situations that may actually "produce physical torture or a lingering death." Id. As a result, a "[f]ailure to provide medical care to a person in custody can [also] rise to the level of a constitutional violation [of the Eighth Amendment] under § 1983 … if that failure rises to the level of deliberate indifference to that person's serious medical needs." Groman v. Township of Manalapan, 47 F.3d 628, 636-37 (3d Cir. 1995).

Essentially, the "deliberate indifference" standard is a two-pronged test, requiring a Plaintiff to show that: (1) the prisoner's medical needs are serious; and (2) the defendants were deliberately indifferent to those needs. Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003); Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987). The Third Circuit has previously determined that a "serious medical need is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily

7

recognize the necessity for a doctor's attention.'" Potter v. Deputy Attys, No. 08-1762, 2008 U.S. App. LEXIS 26266, at *7-10 (3d Cir. Dec. 23, 2008); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d at 347 (citing Pace v. Fauver, 478 F. Supp. 456, 458 (D.N.J. 1979)). The Third Circuit has also considered the medical consequences to a plaintiff of a delay or denial of requested medical treatment. Id.

In Estelle, the Court concluded that deliberate indifference could only result when the deprivation of the prisoner's serious medical needs constituted "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. Id. (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). This does not mean, however, that every claim by an incarcerated individual alleging that he did not receive adequate medical treatment is a violation of the Eighth Amendment. As stated in Estelle,

> In the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend evolving standards of decency in violation of the Eighth Amendment.

Id.; see also Farmer v. Brennan, 511 U.S. 825, 835 (1994). A plaintiff can establish that an official was deliberately indifferent to his medical condition in a variety of ways, including, but not limited to, situations where an official "(1) kn[ew] of a prisoner's need for medical treatment but intentionally refuse[d] to provide it; (2) delay[ed] necessary medical treatment based on a non-medical reason; and (3) prevent[ed] a prisoner from receiving needed or recommended

medical treatments." Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993) (quoting Lanzaro, 834 F.2d at 346-47)).

However, this Court generally grants prison doctors significant leeway in the course of medical treatment they pursue with the plaintiff so long as it is based on "sound professional judgment." Christy v. Robinson, 216 F.Supp. 2d 398, 413 (D.N.J. 2002) (citing Inmates of Allegheny Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979)). Although a court will generally not find deliberate indifference where plaintiff was provided with some form of medical care, it does not preclude liability in instances where the care was not based on sound medical judgment. Id.; see also Johnson v. Watson, No. 08-2897, 2008 U.S. App. LEXIS 25554, at *2-4 (3d Cir. Dec. 17, 2008) ("mere disagreement as to the proper medical treatment" does not support a claim of an Eighth Amendment violation") (internal quotations and citations omitted).

### D. CMS Defendants

In Monell v. Dep't of Soc. Servs. Of City of New York, 436 U.S. 658, 691-94 (1978), the Supreme Court held that a municipality may not be held liable under § 1983 under a theory of respondeat superior. As developed, the Third Circuit has determined that a private corporation performing a municipal function is also subject to the holding in Monell. Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003); see also Powell v. Shopco Laurel Co., 678 F.2d 504, 506 (4th Cir. 1982) (holding that reasoning of Supreme Court in Monell was equally applicable to private corporations and that § 1983 "evinces" a Congressional intent not to impose vicarious liability); Iskander v. Vill. Forest Park, 690 F.2d 126, 128 (7th Cir. 1982) (same); Hemphill v. Prison Health Services, Inc., No. 05-1950, 2006 U.S. Dist. LEXIS 60007, at 17, n.3 (D.N.J. Aug. 24, 2006) (same). Thus, in order to assert a claim against CMS, individually or for the actions taken by Dr. Martin, Plaintiff must show that a constitutional

deprivation resulted from an official custom or policy or, alternatively, from the actions of an official with "final authority to establish municipal policy." Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986).

In the case at bar, CMS is a private corporation performing a state function of providing health care to prisoners. The record clearly indicates that medical professionals have treated Plaintiff while he was, and continues to be, incarcerated. The crux of Plaintiff's argument is the conclusory and baseless assertion that his treating doctors failed to properly screen, diagnose and treat him for his knee pain so as to constitute an Eight Amendment violation pursuant to 42 U.S.C. § 1983. Particularly, Plaintiff asserts that because his second knee surgery was delayed by twelve months,[4] CMS was deliberately indifferent to Plaintiff's ailment. However, other than the substantive claim alleging deprivation of medical attention, Plaintiff has not adduced any evidence of, nor alleged, a policy or custom enacted by CMS that amounted to deliberate indifference. See generally Pl.'s Compl. Plaintiff has also failed to introduce evidence that any CMS official with final policymaking authority acted with deliberate indifference to his need for adequate medical care. Without such showing, the Court finds that under the principles of Monell, CMS cannot be held vicariously liable for the claims arising out of § 1983 asserted by Plaintiff. Accordingly, Defendant's motion for summary judgment is granted.

**E. Dr. Allan Martin, M.D.**

---

[4] The medical records indicate that Plaintiff's second knee surgery was recommended on December 2, 2004. See Azara Decl., December 2, 2004 Entry. The records also indicate that Plaintiff's surgery was not approved until March 11, 2005. Id. at March 11, 2005 Entry. While the surgery was actually approved nine months before the surgery (not twelve months as Plaintiff asserts), this Court gives Plaintiff the benefit of all inferences in assuming a twelve-month delay.

As stated above, Plaintiff's claim against CMS fails because Plaintiff does not meet the requirement established by Monell. However, Plaintiff reasserts the same allegations against Dr. Allan Martin in an individual capacity as a CMS employee. Particularly, Plaintiff contends that Dr. Martin was deliberately indifferent to Plaintiff's knee pain by "failing to properly screen, diagnose and treat" Plaintiff so as to constitute a violation of the Eighth Amendment pursuant to 42 U.S.C. § 1983. Plaintiff alleges that since Dr. Martin has not provided an explanation of why Plaintiff's knee surgery did not occur until approximately one year after it was recommended, Dr. Martin was "deliberately indifferent" to Plaintiff's condition.

In the instant matter, the dispositive issue is whether Dr. Martin was deliberately indifferent to Plaintiff's knee condition. Specifically, Plaintiff alleges that because there was a twelve-month delay between the recommendation for Plaintiff's arthroplasty surgery and the date the actual surgery was performed, Dr. Martin was deliberately indifferent to Plaintiff's medical needs. However, the voluminous medical records provided belie this contention. Indeed, the sheer number of medical visits regarding Plaintiff's knee (and abdomen) indicate Plaintiff has received and continues to receive quite extensive medical treatment while in custody at NJSP. See generally Declaration of Dr. Allan Martin ("Martin Decl."), Exhibit E, CMS Medical Records. That care included surgery at St. Francis Medical Center on Plaintiff's right knee on February 11, 2004, a right knee replacement on December 20, 2005, and a return visit to St. Francis Medical Center to have his right knee "washed out" on or about January 7, 2006. Id. The Court appreciates and understands that Plaintiff, after receiving several extensive operations and procedures, would be frustrated by the seeming ineffectiveness of these treatments; nevertheless that dissatisfaction may not serve as the basis for an Eighth Amendment

claim of deliberate indifference. That these procedures have not been successful do not expose CMS and its employees to liability.

The records also indicate that from Plaintiff's first complaint in 2003 through 2008, Plaintiff was seen on more than forty-five different occasions relating to his knee pain. Those visits not only resulted in the approval of medication to ease Plaintiff's pain, but also the recommendation and approval of Plaintiff's two knee surgeries. Id. More specifically, the records indicate that from the time Plaintiff's arthroplastic surgery was recommended on December 2, 2004 until the date of the actual surgery on December 27, 2005, Plaintiff was seen on more than five different occasions relating to his knee. Id.

Plaintiff's claim that a twelve-month delay in providing Plaintiff with a second knee surgery constitutes deliberate indifference is unjustified. As case law indicates, a delay in a surgical procedure does not automatically rise to the threshold of deliberate indifference. For example, in Ayala v. Terhune, Ayala underwent an unsuccessful sub-total colectomy in January of 1995, and when he was subsequently discharged, it was suggested by his doctor that he "might" require future corrective surgery. From 2000 through 2003, Plaintiff made repeated requests to NJSP and CMS administrators, seeking approval for colostomy reversal surgery, to which he received little or no response. After filing suit, corrective surgery was finally approved in May 2003. The Court ultimately held that, "[a]lthough Ayala argues that the … defendants should have approved the … surgery … and should have referred him to a specialist who could perform the surgery, [the] allegations [were] simply not enough, in and of themselves, to state a claim under the Eight Amendment." Ayala v. Terhune, 195 Fed. Appx 87, 91 (3d Cir. 2006) (citing Estelle, 429 U.S. at 107). Moreover, in Davis v. First Corr. Med. 589 F.Supp. 2d 464 (3d Cir. 2008), where plaintiff alleged that a delay in treatment constituted deliberate indifference,

12

the court held that while there may have been a delay in surgery due to diagnostic testing and scheduling, such a delay does not constitute deliberate indifference to the inmate's medical condition without a more serious allegation that the delay was due to non-medical reasons. Id. Similarly, in the case at bar, Plaintiff presents no evidence that the one-year delay in connection with receiving one of his surgeries was due to a non-medical reason, especially when Plaintiff was under continuous treatment for his knee ailment while awaiting his surgery. Given the record, CMS was nothing but responsive to Plaintiff's complaints of pain, and provided the treatment it thought medically necessary at the time. That Plaintiff disagrees with this course of treatment is, as stated supra, an improper basis for a deliberate indifference claim. Therefore, in the absence of evidence to the contrary, there is no material factual dispute that Dr. Martin is not liable for an Eighth Amendment violation, and Plaintiff's constitutional claim against it cannot succeed. Accordingly, Dr. Martin's motion for summary judgment on Plaintiff's § 1983 claim is granted.[5]

### F. Defendant Roy L. Hendricks

Plaintiff's final claim asserts that Hendricks was also deliberately indifferent relating to Plaintiff's stomach ailments.[6] More specifically, Plaintiff claims that Hendricks was aware of

---

[5] In addition to Martin, Plaintiff names several other CMS employees, including Paul Talbot, Rizwana Naveed Hamid, Laurence Donkor, Arlene Tinker, Lawrence Talbot, Carole Holt, and Ellen Warner. While it is unclear whether these defendants are currently employed by CMS, CMS has not entered an appearance or moved on their behalf. Over the course of this litigation, however, Plaintiff has failed to pursue his claims against these defendants. Because it is clear from the record that neither CMS nor Martin were deliberately indifferent to Plaintiff's medical needs, the Court finds that Plaintiff's claims against these additional defendants also fail as a matter of law.

[6] Plaintiff's claim that Hendricks was deliberately indifferent to Plaintiff's knee has already been dismissed by this Court. See Casilla v. N.J. State Prison, No. 05-4590, 2008 U.S. Dist. LEXIS 64780 (D.N.J. Aug. 21, 2008).

Plaintiff's medical complaints, did not provide proper medical care, deliberately ignored Plaintiff's serious health issues, and withheld and denied Plaintiff's necessary medical treatment. However, the record clearly indicates that Plaintiff had comprehensive medical treatment and was provided continual care during the entire time listed in the complaint and was seen by CMS officials and employees for the ailment of which he complained.

  A distinction may be drawn between primary medical providers, be it doctors and nurses, and those officials charged with general operation of a correctional facility. As stated in Spruill v. Gillis, "[i]f a prisoner is under the care of medical experts … a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). Furthermore, "[h]olding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor … and … under such a regime, non-medical officials could even have a perverse incentive not to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability." Id. Thus, the Spruill Court concluded that, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official cannot be found liable for deliberate indifference." Id. In the present matter, the record indicates that not only was Plaintiff under continual medical care for the time period identified in the complaint, but also, Hendricks had absolutely no reason to believe that Plaintiff was being inadequately treated, or alternatively, not being treated at all for a serious medical need. All Hendricks had to do was turn to Plaintiff's extensive medical history at NJSP to read a drastically different account. Thus, Plaintiff's claim against Hendricks cannot succeed. However, for thoroughness and clarification, Plaintiff's claim

that Hendricks was deliberately indifferent to Plaintiff's medical conditions will be more fully addressed.

The records are clear that Plaintiff was under the continuous care of medical professionals from 2003-2008. Hendricks never denied Plaintiff access to medical care nor did he demonstrate deliberate indifference to Plaintiff's medical needs. For the time period identified by the complaint, Plaintiff was seen by a CMS nurse, doctor or specialist for his stomach ailments on more than sixty different occasions. Moreover, Plaintiff was prescribed medications on multiple occasions to treat his many illnesses. See generally Exhibits A and E.

Plaintiff identifies three separate letters written to Hendricks and other medical personnel asking for treatment for his abdominal pain. Specifically, Plaintiff refers to a letter written by Public Defender Smith on March 27, 2003, a letter written by Plaintiff's mother on May 19, 2003, and a letter written by Public Defender Smith to Hendricks on August 6, 2003. The first two letters were answered by Assistant Superintendent Mee on April 8, 2003, and by Director of the Division of Operations James Barbo on May 29, 2003, respectively. The third letter was allegedly not answered. Plaintiff claims that not only was Hendricks aware of Plaintiff's complaints, but moreover, that Hendricks deliberately ignored Plaintiff's request for medical treatment and withheld proper medical care. However, the record clearly shows that even though the August 6, 2003 letter was not answered, Plaintiff was receiving continuous medical care by trained medical professionals during the time he alleges inadequate medical treatment. Indeed, during the time period of the letters in question, from March 2003 to September 2003, Plaintiff was seen on approximately ten different occasions regarding his abdominal pain. It is abundantly clear that any complaints Plaintiff may have sent to Hendricks or other medical personnel were adequately addressed by the appropriate parties in an ongoing process to resolve his many

medical issues. Because Plaintiff was under the continuous care of CMS and its medical staff, Hendricks cannot be found deliberately indifferent to Plaintiff's medical concerns due to his alleged failure to personally address Plaintiff's letters. Thus, Hendricks' motion for summary judgment must be granted.

Hendricks also contends that even if Plaintiff's rights were violated and Hendricks was found to be deliberately indifferent to Plaintiff's ailment, Hendricks is entitled to qualified immunity. However, because this Court has already found that Hendricks was not deliberately indifferent to Plaintiff, it is not necessary to discuss Hendricks' claim of qualified immunity. Moreover, because Plaintiff has not provided this Court with enough evidence to substantiate his claims of deliberate indifference by any of the aforementioned defendants, Plaintiff's claim for punitive damages must be dismissed.

### III. Conclusion

For the foregoing reasons, Plaintiff's constitutional claims against St. Francis Medical Center, CMS Defendants and Hendricks cannot succeed. Thus, all defendants' summary judgment motions are granted and Plaintiff's claims are dismissed.

Dated: July 15, 2009               /s/ Freda L. Wolfson
                                   FREDA L. WOLFSON
                                   United States District Judge